CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 01 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| HARRY J. ROBERTSON, | ) | CASE NO. 4:06CV00022 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which partially denied plaintiff's January 29, 2003 claim for a period of disability, disability insurance benefits and supplemental security income benefits but awarded, effective June 15, 2004, supplemental security income benefits (SSI) under the Social Security Act (Act), as amended, 42 U.S.C. §§416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case.[1] The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter AFFIRMING the Commissioner's award of benefits to the plaintiff on and after June 15, 2004, REVERSING the remainder of the Commissioner's final decision, and REMANDING the case to the

---

[1] Plaintiff's January 29, 2003 claim sought to establish onset beginning June 1, 1998 which was a period subject to a prior claim filed on July 29, 1999. That prior claim was denied by a final decision of the Commissioner when the Appeals Council denied review on December 6, 2002, and plaintiff did not seek judicial review in the United States District Court. (R. 20.) Whether that prior claim was reopened during consideration of the instant claim is an issue raised by plaintiff and is to be addressed in this case.

Commissioner for further proceedings.

In a decision issued on December 15, 2004, the Administrative Law Judge (Law Judge) found that plaintiff, who 50 years old with a high school education and was last insured on December 31, 2003, had history of past relevant work as a truck driver and had not engaged in substantial gainful activity since his alleged date of disability onset, June 1, 1998. (R. 26, 34.) The Law Judge further found that plaintiff suffered diabetes, obesity, depression and limited intellectual functioning which were severe impairments though not severe enough to meet or equal any listed impairment until June 15, 2004, at which time plaintiff's depression and borderline intellectual functioning disabled him. (R. 32- 34.)[2] The Law Judge was of the view that plaintiff's allegations regarding his impairments and their impact on his ability to work were "not totally credible." (R. 34.) The Law Judge determined that, prior to June 15, 2004, plaintiff was not precluded from performing simple tasks in the light and sedentary categories with certain sit/stand/walk limitations. (R. 33-34.) While the Law Judge concluded plaintiff was unable to perform his past relevant work, by application of the Medical-Vocational Guidelines ("grids") to plaintiff's exertional limitations and by reference to testimony provided by the vocational expert (VE), the Law Judge concluded that the unskilled sedentary jobs as a cashier and clerical worker were available to plaintiff. (R. 34.) By the same token, the Law Judge further concluded that, after June 15, 2004, plaintiff was disabled, though he noted that plaintiff's disability commenced April 23,

---

[2] Specifically, the Law Judge found that, based on evidence offered by a consultative examiner after the September 20, 2004 hearing, plaintiff was disabled under 20 C.F.R. § 416.925, Appendix 1, § 12.04 by virtue of an affective disorder. (R. 32.) Despite the fact that the consulting examiner also revealed IQ scores ranging from 62 to 67, the Law Judge made no specific findings concerning whether plaintiff's intellectual function met or equaled any listed impairment prior to September 20, 2004.

2

2002. (R. 35.) On April 26, 2005, the Law Judge issued an Amended Decision correcting a clerical error in the December 15, 2004 decision.[3] (R. 20-21.)

Plaintiff appealed the Law Judge's Amended Decision to the Appeals Council, which found no basis in the record, or in the reasons advanced on appeal, to review the Law Judge's Amended Decision. (R. 7-9.) Accordingly, the Appeals Council denied review and adopted the Law Judge's Amended Decision as the final decision of the Commissioner. This action ensued.

According to the plaintiff, there are two sub-periods related to plaintiff's claim that are before the court. The first is the sub-period from December 15, 2000, the day after the date of the first Law Judge's decision until June 15, 2004, the date the second law Judge found plaintiff became disabled. Evaluation of this sub-period involves the normal substantial evidence inquiry. Pl.'s Combined Motion, p. 2. The second sub-period is from the alleged date of disability onset, February 1, 1998, until the date of the first Law Judge's decision, June 15, 2004. Evaluation of the second sub-period involves an inquiry concerning whether plaintiff's initial claim had been constructively reopened by the second Law Judge in considering the merits of the case. *Id.* at pp. 2-3. Plaintiff contends that the second Law Judge's decision is not supported by substantial evidence, and that he constructively reopened the initial application for benefits. The Commissioner takes opposing views on both counts.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hayes*

---

[3]The sole purpose of this decision was to clarify that plaintiff's disability commenced on June 15, 2004, correcting a "misstatement" that it commenced on April 23, 2002. The balance of the decision was adopted and incorporated in his Amended Decision. (R. 20-21.)

3

*v. Sullivan*, 907 F. 2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F. 2d 987 (4th Cir. 1984). The Regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. 20 C.F.R. §§ 404.1527 and 416.927; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

Mental retardation is an impairment covered by the Listings. 20 C.F.R. §§ 404.1525 and 416.925, Appendix 1, § 12.05. Generally, two requirements must be met. First mental retardation must be severe enough to produce sub-average intellectual functioning with "deficits in adaptive functioning," and, second, these deficits must manifest during the "developmental period; i.e. . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The severity requirements of the Listings are considered regulatorily met when the claimant's valid IQ scores range between 60 and 70, and the claimant suffers "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Nevertheless, a Law Judge and the Commissioner may decline to accept a claimant's performance on the WAIS-II as a valid indication of his/her intellectual function where the claimant has demonstrated a work history inconsistent with those scores, or where the claimant's performance in IQ testing is depressed (lowered) by depressive symptoms or by pain. 20 C.F.R. §§ 404.1520 and 416.920; *Luckey v. U.S. Dept. of Health & Human Servs.*, 890 F. 2d 666 (4th Cir. 1989); *Murphy v. Bowen*, 810 F.2d 433 (4th Cir. 1987); *compare Gross v. Heckler*, 785 F. 2d 1163, 1166 (4th Cir.

4

1986); *Miller v. Commissioner*, Case No. 4:05CV00037(W.D. Va. July 19, 2006) (Kiser, J.).[4]

Once a decision by the Commissioner becomes final by the failure of a claimant to seek judicial review of the decision denying benefits, the court does not have jurisdiction to review either that claim or the Commissioner's decision not to reopen the claim, unless the Commissioner has reopened the claim constructively or *de facto* by actually addressing the merits of the prior claim. *McGowen v. Harris*, 666 F. 2d 60, 65-66 (4th Cir. 1981); *Barton v. Harris*, 683 F. Supp. 1024, 1030-1031 (D. S.C. 1988); *see also Califano v. Sanders*, 430 U.S. 99 (1977); *King v. Chater*, 90 F. 3d 323 (8th Cir. 1996). In this connection, the Law Judge conducting the proceedings is to be given some "leeway" to look far enough into the subsequent claim in order to determine whether it encompasses the same application upon which the claimant is barred by administrative *res judicata*. *Hall v. Chater*, 52 F. 3d 518, 520 (4th Cir. 1995).

There is no question that plaintiff's intellectual function is, and has been a major component of his claims for benefits. The Law Judge noted and considered in the body of his decision, that plaintiff was seen in October and November 2001 by Howard J. Leizer, Ph.D. and that he opined plaintiff suffered borderline intellectual functioning which, in October, he estimated to range between 70 and 80. (R. 31, 330-332.) What the Law Judge did not also note, but which appeared in the correspondence from which the Law Judge made his findings, was that, by November, Dr. Leizer both suspected plaintiff's intellectual function was "Borderline to MR [mildly retarded]," and observed that plaintiff was "very dependent upon his parents" and without "transferable job skills." (R. 330.) Dr. Leizer submitted a subsequent letter report on July 21,

---

[4]In *Branham v. Heckler*, 775 F. 2d 1271(4th Cir. 1985), the court held that a claimant's IQ is to be considered lifelong absent evidence showing it is not.

5

2004 revealing his estimate, without testing, that plaintiff's IQ was "in the high 60's." (R. 460.)

At the Commissioner's request, on September 17, 2004, plaintiff underwent a consultative psychological examination and testing by Blanche Williams, Ph.D. In addition to providing information about plaintiff's mental status and an assessment of his work-related abilities, which eventually provided the basis for the Law Judge's decision to grant benefits due to his depression, Dr. Williams reported valid WAIS-II IQ scores ranging from 62 to 67, just as Dr. Leizer had last estimated. (R. 462-469.)

Moreover, it is clear from the Law Judge's decision that he evaluated a considerable amount of medical evidence dating from 2000 until the date of his decision. (See e.g. R. 33.) While acknowledging and discussing the data and opinions generated during that period, and while he found that plaintiff did suffer "limited intellectual function," which amounted to a severe impairment under the regulations, the Law Judge never made specific findings with respect to whether plaintiff's intellectual function met or equaled the requirements of §12.05C of the Listings. Instead, he engaged in extensive discussions and findings concerning the activities he found plaintiff had undertaken beginning when plaintiff entered school. These activities included those related to pursuing his claims for benefits which the Law Judge believed were documented in "Exhibit AC2." In the end, the Law Judge concluded that plaintiff was not "a man who is retarded." (R. 32.) He then noted an absence of evidence "that claimant functioned in the retarded range during the developmental period" as one of the bases for rejecting plaintiff's claim for disability prior to June 15, 2004. (*Id.*)

As counsel for the plaintiff points out, the documentation in "Exhibit AC2" cited by the Law Judge to support his conclusion that plaintiff was not "retarded" does not exist in the extant

Case 4:06-cv-00022-JLK-BWC   Document 17   Filed 12/01/06   Page 6 of 9   Pageid#: 92

certified record of the administrative proceeding which is before this court. This is significant because psychological evidence dating back at least to 2001 reveals the likelihood that plaintiff's intellectual functioning was between borderline and mildly retarded. The Commissioner's own consulting examiner converted that likelihood to a certainty when she reported valid IQ scores between 62 and 67 in 2004 which, when coupled with plaintiff's physical or other mental impairment that most certainly imposed "additional and significant work-related limitations" as set forth in § 12.05C of the Listings, presented convincing evidence that plaintiff's intellectual functioning was sufficiently low to meet the severity requirements for that listed impairment.

Moreover, a substantial part of the evidence purportedly relied on by the Law Judge to support his conclusion that plaintiff's actual historical functioning demonstrated the absence of retardation meeting either the severity or the durational requirements of § 12.05 does not exist in the administrative record. Thus, the Law Judge's determination of plaintiff's intellectual function is not supported by the substantial evidence in this case.

Plaintiff offers considerable argument about why the court should proceed to adjudicate whether his IQ has met the requirements of the Listings. Aside from his mental retardation being considered lifelong under *Branham v. Heckler*, 775 F.2d 1271 (4th Cir. 1985), plaintiff is of the view that Fourth Circuit decisional authority forecloses any attempt by the Commissioner to utilize plaintiff's schooling or work efforts to demonstrate that, in fact, he was not mentally retarded during the developmental period. *See Luckey*, 890 F. 2d at 666; *Murphy*, 810 F. 2d at 433. Those cases certainly say what the plaintiff suggests, but it would seem to be the better practice to remand the case in order to give the Commissioner an opportunity to reconsider plaintiff's claim on the extant evidence with the understanding that Circuit authority does not appear to have been

modified by regulatory changes.

Having said this, the undersigned turns to whether the Law Judge actually reopened plaintiff's prior claim. Clearly, a Law Judge and the Commissioner, for that matter, is granted some leeway in ascertaining whether any portion of a claim being decided is the same as one already finally determined against the claimant. Borrowing from more current lingo, a Law Judge may "sneak and peak" into the evidence offered in support of a current claim in order to ascertain whether all the claimant is nothing more than a back door attempt to reopen a prior claim barred by administrative *res judicata*, but to do much more risks actually considering the prior claim.

As plaintiff contends, the instant Law Judge did much more than simply sneak a peak at the evidence related to the prior claim. In his decision, the Law judge noted that not only had he considered all the evidence concerning plaintiff's depression and related mental testing, he made the determination that plaintiff's disability commenced June 15, 2004 "and not earlier." (R. 29.) Thus, it is the undersigned's view that the Law Judge actually addressed the merits of plaintiff's mental impairments encompassed by a prior claim which, absent reopening, would have been barred because of administrative *res judicata*.

Plaintiff asks the court to enter judgment awarding benefits on his latest and reopened claims because he does not believe a remand would serve any useful purpose. While plaintiff certainly is right with respect to the period after June 15, 2004 when plaintiff was determined entitled to benefits, the undersigned is of the view that there is good cause to remand this case to the Commissioner for further proceedings relating to the actual onset of disability before June 15, 2004. Accordingly, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's award of benefits to the plaintiff on and after June 15, 2004, REVERSING the Commissioner's final

8

decision to deny benefits before that date and REMANDING the case to the Commissioner for further proceedings related solely to the onset of disability whether by virtue of his plaintiff's depression or his intellectual function, or both, prior to June 15, 2004.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/
U.S. Magistrate Judge

12-1-06
Date

9

Case 4:06-cv-00022-JLK-BWC   Document 17   Filed 12/01/06   Page 9 of 9   Pageid#: 95