IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| HARRY J ROBERTSON, ) | |
| ) | Case No. 4:06-CV-00022 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LINDA S. McMAHON, ) | |
| Acting Commissioner of Social Security, ) | By: Jackson L. Kiser |
| ) | Senior United States District Judge |
| Defendant. ) | |

[1] Before me is the Report and Recommendation of the United States Magistrate Judge. The Magistrate Judge recommends remanding the case for further proceedings for lack of substantial evidence. The Commissioner filed Objections to the Magistrate's Report and Recommendation. I have reviewed the Magistrate Judge's Report and Recommendation, the Commissioner's Objections, the Plaintiff's Response to those Objections, and the relevant portions of the record. The matter is now ripe for decision.

For the reasons stated below, I will **ACCEPT** the Magistrate Judge's Report and Recommendation and will **DENY** the Commissioner's Objections. The Commissioner's final decision regarding the Plaintiff's claim for benefits will therefore be **AFFIRMED** in part and **REVERSED** in part**,** and the case will be **REMANDED** to the Commissioner for further hearings in accordance with this opinion. This case will be **DISMISSED** from the docket of this Court.

---

[1]Linda S. McMahon has been appointed to serve as Acting Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rules of Appellate Procedure 43.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Harry J. Robertson was born on August 31, 1954, and claims that his disability began on February 11, 1998. He first applied for supplemental security income benefits ("SSI") on July 29, 1999. On December 15, 2000, the Administrative Law Judge ("ALJ") issued a report which found that the Plaintiff suffered from diabetes, obesity, depression, and a limited intellect, but these conditions did not meet the level of any listed impairment. The Plaintiff applied for SSI again on January 29, 2003. In a report issued December 15, 2004, a second ALJ found that the Plaintiff had been disabled after June 15, 2004, but at no time prior.

The ALJ found the Plaintiff disabled "by depression and borderline intellectual functioning" after June 15, 2004 but not before. In making the determination about the Plaintiff's disability onset date, the ALJ reviewed the reports of two medical experts: Dr. Blanche Williams ("Dr. Williams"), an expert psychologist who evaluated the Plaintiff for the Social Security Administration; and Dr. Joseph Leizer ("Dr. Leizer"), the Plaintiff's treating psychologist. Dr. Williams administered a Wechsler Adult Intelligence Scale ("WAIS-III") test which showed the Plaintiff had a verbal IQ of 64, a performance IQ of 67, and a full scale IQ of 62. She diagnosed the Plaintiff with mild mental retardation and dysthymic disorder. Dr. Leizer is a clinical psychologist who examined the Plaintiff three times in the fall of 2001. Although Dr. Leizer did not administer a formal IQ test, he diagnosed the Plaintiff with a depressive disorder and characterized the Plaintiff's intellectual functioning as mild to borderline mentally retarded, estimating the Plaintiff's IQ to be between 70 and 80 at one time, and in the high 60's at another time. Dr. Lezier could not rule out whether the Plaintiff's depression interfered with his intellectual ability.

In addition, the ALJ reviewed the Plaintiff's work and school history as well as the record of the Plaintiff's activities in pursuing his disability claim. The Plaintiff was never placed in special education, left school after completing the eleventh grade, and later obtained a GED. He worked at various jobs prior to seeking disability including as a truck driver and a driving instructor. The ALJ also cited "Exhibit AC2" which contained "letters to his [the claimant's] attorney and his congressman and discussed issues related to his disability case and the attorney's representation and the attorney's fee . . . are not consistent with a determination that he was mentally retarded." In addition, the ALJ referred to the claimant's completion of "a variety of forms (located in the E sections of the prior file and the current file). . . in a manner that would not lead one to conclude that he was retarded."

Although the ALJ found that the Plaintiff had a back impairment, diabetes, obesity, depression and limited intellectual functioning which were "severe" based on the definition in 20 CFR §§ 404.1520(c) and 416.920(b), the ALJ concluded that none of these conditions met definition of any listed impairment prior to June 15, 2004. Acknowledging that the Plaintiff could not have continued in his past relevant work, the ALJ found that, according to the vocational experts, the Plaintiff could find employment in light or sedentary work such as cashier or clerical worker prior to the date of that report. From June 15, 2004, the ALJ found that the Plaintiff was disabled by depression and borderline intellectual functioning and entitled to SSI.

The Plaintiff appealed the ALJ's findings to the Appeals Council, which denied the review and adopted the ALJ's decision. The Plaintiff filed this action on April 21, 2006. The Plaintiff filed a Motion for Summary Judgment on September 24, 2006 and the Defendant

3

Commissioner responded on October, 24, 2006. The Magistrate Judge issued a Report and Recommendation on the Motion for Summary Judgment on December 1, 2006. The Commissioner objected to the Report and Recommendation on December 12, 2006 and the Plaintiff responded on December 18, 2006.

## II. STANDARD OF REVIEW

Congress has limited judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater,* 76 F.3d 585 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by providing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545; *Hays v. Sullivan*, (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527 and 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 640.

## III. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

4

This Report and Recommendation covers two separate issues. First, the Plaintiff contends that the second ALJ erred in finding that the Plaintiff was not disabled from the period between December 15, 2000 until June 15, 2004. The Plaintiff also argues that I should confirm that the disabling impairment he suffered after June 15, 2004 existed prior to that date, and that the Commissioner's findings otherwise were unsupported by substantial evidence. Instead of ruling directly on this matter, the Magistrate recommended remanding the ALJ's finding that the Plaintiff did not meeting the listed impairment for further proceedings; I adopt that recommendation. Secondly, the Plaintiff argues that the second ALJ constructively reopened the Plaintiff's initial July 29, 1999 application by considering it in looking at the merits of the second application. The Magistrate agrees with this argument, and the Defendant offers no reply. I adopt this portion of the recommendation as well for the reasons stated below.

        A.       *The ALJ Lacked Substantial Evidence for Finding the Plaintiff was not Disabled Prior to June 15, 2004*

Robertson contends that the ALJ's finding that he was not mentally retarded, and therefore disabled, is wrong for two reasons. First, the ALJ wrongly rejected the medical evidence presented by two psychologists without recontacting them for more information. Secondly, the ALJ incorrectly evaluated the Plaintiff's forms, letters, and other activities in pursuing his claim for benefits as evidence of higher intellectual functioning when these items were not part of the administrative record or were not actually produced by the Plaintiff's own hand. The Commissioner counters that the ALJ appropriately considered daily activities and work experience in evaluating the Plaintiff's IQ and that substantial evidence supports the decision. Finally, the Commissioner argues in the alternative that even if the ALJ's determination was not supported by substantial evidence, the court may not remand the decision

5

solely for one finding. I concur with the Magistrate's Report and Recommendation in finding that the ALJ lacked substantial evidence for finding that the Plaintiff was not disabled prior to June 15, 2004, and I remand this finding for further proceedings.

In order to establish a disability entitled to SSI benefits, a claimant must show that he or she has an impairment expected to last more than twelve months which is severe enough to preclude that individual from any kind of substantial work which exists in the national economy. 42 USCS § 423(d). The Social Security Commissioner promulgated regulations which include a five step inquiry for evaluating disability claims which asks whether

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

*Johnson v. Barnhart*, 434 F.3d 650, 654 n.1, (4th Cir. 2005)(*citing* 20 C.F.R. § 404.1520(2005)). At issue here is the third step of the inquiry, namely, whether the Plaintiff's medical impairment met or exceeded the severity of the mental retardation defined in the listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05C. The Plaintiff here claims to have met the requirement of having a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" prior to June 15, 2004. *Id*.

The ALJ found that while the Plaintiff's intellectual functioning was limited prior to June 15, 2004, it was not limited enough to meet the definition in the listings. As evidence for this conclusion, the ALJ cited three sources of evidence: 1) the evaluation of Dr. Williams; 2) the evaluation of Dr. Leizer; and 3) the history of the plaintiff's education, employment, and

6

activities in pursuing his claim for benefits. The Plaintiff argued that the ALJ erred by failing to recontact the two medical experts when their reports proved inadequate. I disagree on this point.

It is true that the psychological reports give conflicting answers to the critical questions of whether the Plaintiff's IQ was within the guideline range of 60-70 and how long prior to June 15, 2004 this level of function existed. While Dr. Williams diagnosed the Plaintiff with mild mental retardation and a dysthymic disorder and reported test scores showing the Plaintiff's IQ was within the 12.05C listed impairment range of 60-70, the ALJ felt that this report did not reveal how long the Plaintiff had been impaired nor whether the Plaintiff's depression may have affected his intellectual performance on the test. Dr. Leizer diagnosed the Plaintiff with a depressive disorder and estimated the Plaintiff's IQ to be within the listing's range for borderline retardation at one time, and mild mental retardation at another. Given that the two psychological reports were not conclusive on the issue of whether the Plaintiff had an IQ in the 60-70 range prior to June 15, 2004, the ALJ looked to the Plaintiff's history of schooling and other activities to draw that conclusion.

The Plaintiff argued that under Regulation 20 CFR 404.1519p (a), the ALJ must recontact the consulting expert if the medical report proves inadequate, and the ALJ failed to do so here. I reject this argument because the medical evaluations provided here were not "inadequate" under the case law definitions of the term. Regulation 20 CFR 404.1519p (a) requires the Commissioner to consider "whether the report provides evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses" and "whether the report is consistent with the other information available to us within the specialty of the examination requested" in reviewing a consultative expert's report, and requires that the expert

7

be recontacted in the event that it is "inadequate or inconsistent." 20 CFR 404.1519p (a)(1, 3). While this regulation applies only to experts consulting on behalf of the Commissioner, a similar regulation calls for the ALJ to recontact a treating physician or psychologist in the event that the initial evidence is inadequate 20 C.F.R. § 416.912(e).[2]

However, a medical report is inadequate within the meaning of these regulations, only "if it hinders the trier of fact in making a decision regarding a claimant's disability." *Jacks v. Barnhart*, No. 03-0674, 2004 U.S. Dist. LEXIS 19232, *13 (N.D. Cal. 2004) (*citing Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). An expert's report is not "inadequate" merely because an ALJ disagrees with the report's conclusions. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). Nor does an ALJ have a duty to recontact an expert when the ALJ can determine from the record if the claimant is disabled. *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (*citing Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004)). The ALJ here may well have found both Dr. Leizer's and Dr. Blanche's reports to be adequate in providing information which helped the ALJ to reach a conclusion even though these reports do not

---

[2]

   When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions. (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 416.912(e).

8

provide the clearest picture of the claimant's condition. The ALJ noted that "establishing the claimant's disability onset date is not a mechanical or precise process." Arguably, the ALJ could determine from the medical expert's reports that recontacting them would not make the process any more precise.

The Plaintiff next argued, and the Magistrate agreed, that the ALJ's determination of the date of disability lacked substantial evidence because the ALJ improperly relied on the Plaintiff's daily activities and history of work and schooling. There is a presumption that a claimant's intellectual abilities are constant throughout the claimant's life absent evidence to the contrary. *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985). After considering the medical reports outlined above, the ALJ concluded that Dr. Leizer's report illustrated "the need to look to other evidence before attributing the Claimant's mental limitations to retardation as opposed to depression and/or complacency." The ALJ concluded that there was evidence rebutting the presumption of lifelong retardation:

> In the absence of evidence that the claimant functioned in the retarded range during his developmental period, his activities in earning a GED, holding a job, living independently, and pursuing his worker's compensation and disability cases convince the Administrative Law Judge that the claimant is not retarded and that he possesses at least borderline intellect and that to the extent that the claimant is experiencing limited intellectual functioning it is due at least in part to depression.

The Plaintiff argues that all of these factors were beyond the scope of the evidence or were improperly considered by the ALJ.

I turn first to the weight given by the ALJ to the evidence that the Plaintiff pursued his claims in a fashion not consistent with a person who is mentally retarded. The ALJ found "Exhibit AC2," which contained letters to the Plaintiff's congressman and attorney, to be

9

particularly convincing, concluding that they "do not reflect correspondence that was generated by a man who is retarded." Moreover, the ALJ found the Plaintiff's ability to understand the disability process and attempts to negotiate fee reductions with the Plaintiff's counsel between 1998 and 2002 were "incompatible with a determination of disability due to mental impairment." While the letters in "Exhibit AC2" may support the ALJ's findings, the absence of any exhibit labeled "AC2" undermines my review of the ALJ's decision for substantial evidence. The Commissioner attributes this absence to a mere errant citation and claims that the information referred to by the ALJ is actually in pages 165-74, 196-200, and 209-14 of the administrative record. However, these pages contain only the social security forms referred to below, they do not contain any letters to the Claimant's congressman, counsel, nor attempts to negotiate a fee reduction. Nor does the rest of the administrative record contain such documents. I can only conclude that the ALJ cited to information that is not in the administrative record.

In addition to the documents in "Exhibit AC2," the ALJ found that the Claimant completed the social security forms in the "E section of the file. . . in a manner that would not lead one to conclude that he was retarded." The Plaintiff's counsel points out that two of these forms have notations from the Plaintiff's sister acknowledging that she assisted the Plaintiff in completing the forms. Based upon an examination of the handwriting on all of the forms in this section, it is possible that the Plaintiff's sister helped to complete all of the forms in her brother's claims. This revelation further undermines the ALJ's conclusion that the manner in which the forms were completed reflects directly on the Plaintiff's mental capacity.

Turning to the ALJ's review of the Plaintiff's school and work history, the Plaintiff and Magistrate agreed that two cases precluded the Commissioner from using a claimant's schooling

10

or work efforts to demonstrate that the claimant was not retarded during his developmental period. *Luckey v H. H. S*., 890 F.2d 666, 669, (4th Cir. 1989); *Murphy v. Bowen,* 810 F.2d 433, 438 (4th Cir. 1987). The Commissioner argues that these cases are superseded by regulations which modify the role of IQ tests in meeting the listed mental retardation disability, and allow the ALJ to consider the claimant's daily activities, work experience, and other evidence in determining whether an IQ score accurately depicts a claimant's intellectual limits. The Commissioner points to the language in 65 FR 50746, 50778 (Aug. 21, 2004):

> The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.
> b. Standardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A.

It is difficult to see how an ALJ could comment on whether "IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation" without considering a claimant's school and work histories.

Even if the Commissioner had not modified 12.05C, both *Luckey* and *Murphy* would still allow the ALJ to consider the evidence of the Claimant's school and work histories because the ALJ must determine if the Claimant was mentally retarded during his developmental period. "A finding of mental retardation requires the claimant to provide evidence to support her burden of proving deficits in adaptive functioning manifested before age 22." *Justice v. Barnhart*, 431 F. Supp. 2d 617, 619 (W.D. Va. 2006). Furthermore, while an IQ test score in the 60-70 range supports the finding that the claimant was impaired during the developmental period, it is not

11

conclusive and can be rebutted by other evidence. *Id.* at 620. *(citing Luckey*, 890 F.2d at 668-69).

Neither *Murphy* nor *Luckey* preclude an ALJ from considering evidence of the claimant's educational or work histories in determining the claimant had deficits in adaptive functioning prior to the age of 22. In *Murphy*, the Social Security Administration argued against extending benefits to a claimant who satisfied the disability listings of 12.05 because the claimant had worked despite his impairment. *Murphy,* 810 F.2d at 438. The Court disapproved of this argument, stating that "[w]hen a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap." *Id*. The Commissioner has not made a similar argument in this case, but instead argued that the Plaintiff's work history , including five year stint as a driving instructor, contradicts a finding that the Plaintiff was impaired in his developmental period.

In *Luckey*, the Social Security Administration used the claimant's 23 year history of working as a short order cook and cashier as evidence to rebut the presumption that the claimant's low IQ was lifelong and had manifested during the developmental years. *Luckey*, 890 F.2d at 668-69. The court rejected this argument in part because of the previously cited quotation from *Murphy*, and in part because the claimant's inability to read or write and lack of education past the fifth grade were evidence of impairment prior to the age of 22. *Id*. (*quoting Murphy,* 810 F.2d at 438). In the case before me, unlike *Luckey*, the Plaintiff has not offered any evidence such as lifelong illiteracy which so convincingly contradicts the evidence of his work history.

In sum, I find that while it was appropriate for the ALJ to rely upon evidence of the

12

Plaintiff's daily life activities, work history, and educational history in determining whether the Plaintiff manifested mental retardation in his developmental years, it was inappropriate to rely on the Plaintiff's activities in pursuing his claims as those activities were not documented in the administrative record, or were misconstrued as the work of the Plaintiff when they may not have been. As the latter sources of evidence were a significant part of the ALJ's determination, I cannot find that his conclusion was supported by substantial evidence. I hereby **REMAND** this case to the Commissioner for further findings on the issue.

I must address the Defendant's contention that the Magistrate erred by recommending a remand only on the issue of whether the Plaintiff was disabled prior to June 15, 2004. The Defendant reads the language in the Social Security Act "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment *affirming, modifying, or reversing* the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" such that I must either affirm, modify, or reverse a case in whole, but not in part. 42 U.S.C. § 405(g) (emphasis added). While the word "or" in plain English is disjunctive and would indicate, as the Defendant suggests, that each item in the phrase be taken separately, courts have traditionally interpreted the word "or" in statutory language to be conjunctive instead of disjunctive when context dictates. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (U.S. 1979); 73 AM. JUR. 2d *Statutes* § 156 (2006). From the context of this statute, it seems clear that district courts are not compelled to *either* affirm *or* reverse, but may affirm in part and reverse in part. The Commissioner has offered no reason why the legislature's grant to courts of the power to affirm, modify, or reverse any decision of the Commissioner's necessarily implies that the court can only affirm in whole or deny in whole. It has long been common practice for courts to

13

affirm in part and reverse in part the decisions of the Commissioner under section 405(g). *See e.g.*, *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (affirming in part, reversing in part, and directing district court to remand to the commissioner for further review); *Garnett v. Sullivan*, 905 F.2d 778, 783-84 (4th Cir. 1990) (finding substantial evidence sufficient to uphold some of the ALJ's findings, reversing others and remanding to the Commissioner for further findings); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (remanding the case in part and affirming in part); *Wolfe v. Chater*, 86 F.3d 1072, 1080 (11th Cir. 1996) (remanding to the ALJ for findings on one issue, affirming in part and vacating in part).

   B. *The ALJ Reopened the Prior Claim by Considering it on the Merits in the Current Claim.*

In his Motion for Summary Judgment, the Plaintiff argued that the ALJ reopened the Plaintiff's prior 1998 claim by looking into the merits of that claim in considering the current application that resulted in this litigation. The Magistrate agreed with this assertion and the Defendant Commissioner has raised no objection.

Administrative *res judicata* prevents the reconsideration of a claim after a final decision on the merits in a prior proceeding on the same cause of action. *University of Tennessee v. Elliott*, 478 U.S. 788, 797 (1986) (*citing United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421-22 (1966)). Typically, a court may not review an ALJ's decision not to reopen a prior claim. *Califano v. Sanders*, 430 U.S. 99, 108 (1977). However, a court may reopen a claim despite the ALJ's invocation of *res judicata* if "a review of the record discloses that the merits of the claim actually have been reconsidered." *Hall v. Chater*, 52 F.3d 518, 520 (4th Cir. 1995).

   The Plaintiff points out that despite the ALJ's assertion that he did not reopen the prior

14

claim, the ALJ did indeed look into and re-consider the merits of that prior claim.  For example, the ALJ "incorporate[d] by reference the description of medical evidence from in [*sic*] the prior Administrative Law Judge's decision in looking to the issue of onset of disability."  Furthermore, the ALJ stated that "the Administrative Law Judge finds that this level of impairment cannot be projected backwards to 1998 or even into 2002."  It seems clear that the ALJ therefore evaluated evidence in the prior claim in making the determination in this current claim.  In so doing, the ALJ reopened the claim which otherwise would have been barred by *res judicata*.

## IV. CONCLUSION

For reasons stated herein, I will **ACCEPT** the Magistrate Judge's Report and Recommendation and **DENY** the Commissioner's Objections.  The Commissioner's final decision regarding the Plaintiff's claim for benefits will therefore be **AFFIRMED** in part and **REVERSED** in part**,** and the case will be **REMANDED** to the Commissioner for further hearings in accordance with this opinion.  This case will be **DISMISSED** from the docket of this Court.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to the Magistrate Judge and all counsel of record.

Entered this 13th day of March, 2007.

                                                    s/Jackson L. Kiser
                                                  Senior United States District Judge

15

Case 4:06-cv-00022-JLK-BWC   Document 20   Filed 03/13/07   Page 15 of 15   Pageid#: 131